# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### NOVEMBER SESSION, 1997

**FILED**

December 18, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9612-CC-00533** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **RUTHERFORD COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. S. DANIEL** |
| **SANDERS CALDWELL,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Denial of Probation) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF RUTHERFORD COUNTY

FOR THE APPELLANT:

JEFFREY S. BURTON
Assistant Public Defender
201 West Main Street
Suite 101, Court Square Bldg.
Murfreesboro, TN 37130

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

GEORGIA BLYTHE FELNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

WILLIAM WHITESELL
District Attorney General
Third Floor, Judicial Building
Murfreesboro, TN 37130

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# <u>OPINION</u>

The Defendant, Sanders Caldwell, appeals as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure. In this appeal, he argues that the trial judge abused his discretion in denying the Defendant's request for probation. We affirm the judgment of the trial court.

On November 6, 1995, the Defendant was indicted on one count of aggravated burglary, two counts of theft over $1,000, and one count of theft over $500. On November 8, 1995, the Defendant was indicted on one count of aggravated burglary and one count of theft over $1,000. The Defendant waived presentment of a charge for passing worthless checks.

Pursuant to a negotiated plea agreement, the Defendant entered several guilty pleas on February 8, 1996. He was convicted of two counts of theft over $1,000 in case numbers 34949 and 35017 and sentenced as a Range I offender to consecutive terms of two years and two years and six months, respectively, in the Department of Correction.[1] He was convicted of two counts of theft under $500 in case numbers 34950 and 34951 and sentenced to eleven months and twenty-nine days for each offense.[2] He was also convicted of one count of passing worthless checks in case number 36005 and sentenced to eleven months and twenty-nine days.[3] The sentences for theft under $500 and passing

---

[1]Tenn. Code Ann. § 39-14-103, a Class D felony.

[2]Tenn. Code Ann. § 39-14-103, a Class A misdemeanor.

[3]Tenn. Code Ann. § 39-14-121, a Class A misdemeanor.

worthless checks were ordered to be served concurrently with the sentences for theft over $1000, for an effective sentence of four and one half years.

The Defendant submitted an application for a suspended sentence. A hearing was scheduled for March 11, 1996, for which the Defendant did not appear. While being served with another warrant for theft, the Defendant became aware of an outstanding capias for his arrest for failure to appear at the probation hearing. He surrendered himself and explained that he thought the hearing was scheduled for April 11. Another hearing was scheduled for July 22, 1996, at which the Defendant appeared. The trial court denied probation at that time.

The Defendant argues that the trial judge abused his discretion in failing to grant probation. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement

that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Although probation "must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) (1990) (Sentencing Commission Comments). This Court must begin its sentencing determination by reviewing the purposes of sentencing set forth in Tennessee Code Annotated section 40-35-102. State v. Davis, 940 S.W.2d 558,559 (Tenn. 1997).

If an accused has been convicted of a Class C, D or E felony and sentenced as an especially mitigated or standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tennessee Code Annotated section 40-35-102 provides in part:

-4-

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption. Ashby, 823 S.W.2d at 169. As our supreme court said in Ashby: "If [the] determination is favorable to the defendant, the trial court must presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." Id. "Evidence to the contrary" may be found in applying the considerations that govern sentences involving confinement, which are set forth in Tennessee Code Annotated section 40-35-103(1):

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See Davis, 940 S.W.2d at 561; Ashby, 823 S.W.2d at 169. The presumption can be successfully rebutted by facts contained in the presentence report,

evidence presented by the state, the testimony of the accused or a defense witness, or any other source provided it is made a part of the record. State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993).

Beyond this, a defendant has the burden of establishing his or her suitability for total probation. Tenn. Code Ann. § 40-35-303(b). To be granted full probation, a defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (citing) Hooper v. State, 201 Tenn. 156, 161, 297 S.W.2d 78, 81 (1956)). The trial court must consider a sentence which is the "least severe measure necessary to achieve the purposes for which the sentence is imposed" and must also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant." Tenn. Code Ann. § 40-35-103(4), (5).

On July 16, 1995, Kristy Beasley reported a burglary in which several items of jewelry were taken. On July 19, 1995, Jason Bailey of Free Cable America reported the theft of several tools and two satellite dishes. On July 20, 1995, the Indian Hills Country Club reported the theft of a lawnmower valued at $750. The Defendant was identified as the person who fenced the stolen items to Roadrunner Salvage. The Defendant was arrested on August 8, 1995, posted a $9,000 bond, and was released on August 11, 1995. On August 27, 1995, Glenn Taylor returned home to find the Defendant leaving his house. Mr. Taylor followed the Defendant, who drove away in a Chrysler New Yorker. The Defendant wrecked the vehicle and fled on foot. Mr. Taylor recovered several

items of his property in the car. The Defendant was arrested on August 28, 1995 and released on the same bond.

Frank's IGA reported to the police that the Defendant had passed four dishonored checks during July, 1995. The Defendant was arrested on December 14, 1995. Kristy Beasley submitted a victim impact statement and made the following comments regarding sentencing:

> Do not go easy on him. I am a school teacher who sees the way her students react to crimes and their punishments, and they think jail is cool and that there are no real consequences. He needs to see that there are consequences or he will not reform. Yes. Please tell him that I feel like he not only stole my property, he stole my memories. He stole my trust. He stole my faith in people. He stole my security. Now, I'm just angry and jaded.

Glenn Taylor made the following victim impact statement regarding the Defendant's sentence: "I understand about the overcrowding in the prisons but the sentencing should be the most anyone can receive. I have to work hard for everything I have and to have someone rob me it is not fair." Ms. Beasley requested $2,000 in restitution and Mr. Taylor requested $700 in restitution.

Detectives Ken Roberts and Preble Morton reported that the Defendant never assisted them in recovering any stolen items. Detective Morton stated that the Defendant could not be trusted because he was a crack cocaine user and that the Defendant tried to blame the crimes on someone else. The presentence report reflects that the Defendant was on parole when the offenses in question were committed. He had also been convicted of five felonies, theft and burglary offenses, prior to the offenses under consideration.

The presentence report reflects that the Defendant was thirty-five and married and the time of sentencing. The Defendant dropped out of high school after the tenth grade. He obtained his G.E.D. on November 7, 1980. He attended Shelby State for a short time. The Defendant reported some use of alcohol and marijuana and that he had used cocaine two or three times. He reported that it had been over fifteen years since he used illegal drugs. He reported working at Briskin Manufacturing Company for a year from May, 1994 to May, 1995, which was verified by the probation officer. No other employment was verified.

A hearing was conducted on July 22, 1996. The Defendant reported that two offenses listed as prior convictions had been dismissed. He also reported that he went to trial on a charge of first degree murder, but was acquitted of that offense based on self-defense. He obtained his G.E.D. while at the Shelby County Penal Farm. The Defendant testified that he had never been on supervised probation and requested intensive supervised probation because of his drug problem. The Defendant corrected the statement in the presentence report and testified that he had been using a variety of illegal drugs for the past fifteen years. The Defendant stated he would be willing to attend an in-house treatment program. The Defendant stated that he would live with his girlfriend and her mother if released on probation and that he would try to obtain employment as a certified welder. He denied current drug use. He stated that the thefts were caused by his drug use.

On cross-examination, the Defendant admitted that he was on parole when he committed the first burglary. He stated that he was charged with burglary but

that he did not enter Mr. Taylor's house. The Defendant named a number of places where he worked from 1980 to 1994, but none had been verified by the probation officer. The Defendant denied taking the items from Ms. Beasley, but stated that he took them to the pawn shop for someone else.

The trial judge noted that he read the presentence report carefully. He noted the Defendant's five prior felonies and that he has spent the majority of the past fifteen years incarcerated or on the street with no "visible sign of employment." The trial court also noted that the Defendant was on parole when he engaged in the offenses that occurred on July 16, 1995, and that he committed the other offenses while out on bond. In sum, the trial court stated that: "He simply is a person who because of his extensive prior criminal record, his inability to really comply with the rules of society is not one worthy of a suspension of his sentence." The trial court obviously determined that probation would not "subserve the ends of justice and the best interest of both the public and the defendant." When considering the evidence contained in this record, we cannot conclude that the trial judge erred or abused his discretion in denying probation.

Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
JOSEPH M. TIPTON, JUDGE